UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

| | |
|---|---|
| JERRY BELLAMY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-30015 |
| | ) |
| JEFFERSON PETRIE, COLIN COCHRANE, | ) |
| RUBEN BORRERO, and THOMAS SHEEHAN, | ) |
| in their individual capacities, and CITY OF | ) |
| SPRINGFIELD, | ) |
| | ) |
| Defendants. | ) |

———————————————————————

## **COMPLAINT**

### **Introduction**

1.     This is a civil rights action against Springfield police officers for assaulting and wrongfully arresting Plaintiff Jerry Bellamy. Mr. Bellamy went to the police station to complain about an unjust parking ticket. Defendant Jefferson Petrie responded by choking Mr. Bellamy and pushing him out of the station. The other Defendant police officers joined in pushing, punching, and arresting Mr. Bellamy. The incident was recorded on video.

2.     The City of Springfield is sued for allowing its police department to develop a policy or custom of failing to properly supervise, investigate, and discipline its police officers. These policies and customs allowed Springfield police officers to believe they could violate the constitutional rights of civilians like Mr. Bellamy with impunity.

## Jurisdiction

3.       This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and § 1343. Supplemental jurisdiction over claims arising under state law is authorized by 28 U.S.C. § 1367.

## Parties

4.       Plaintiff Jerry Bellamy is a citizen of the United States and a resident of Springfield, Massachusetts.

5.       Defendants Jefferson Petrie, Colin Cochrane, Ruben Borrero, and Thomas Sheehan were members of the Springfield police department at the time of the facts alleged in this complaint. Their actions alleged in this complaint were taken under the color of law. They are sued in their individual capacities.

6.       Defendant City of Springfield is a municipality in Massachusetts. It is sued as a local governmental agency under the *Monell* doctrine.

## Facts

### False Arrest and Excessive Force Incident

7.       On June 29, 2017, Jerry Bellamy went to the Springfield police station to complain about a parking ticket he had just received, which he felt was in error.

8.       Mr. Bellamy entered the station lobby with the parking ticket in his hand.

9.       The lobby is accessible to the general public. A police officer is typically stationed behind a window with a tray through which papers can be passed.

10.     Mr. Bellamy spoke to Officer Petrie through the window. Mr. Bellamy said he wanted to speak to a white shirt, referring to a superior officer.

11.     Officer Petrie responded saying, "What is your f'n problem?" Mr. Bellamy responded with similar language.

12.     The conversation between Mr. Bellamy and Officer Petrie was very brief.

13.     Less than twelve seconds after Mr. Bellamy arrived at the window, Officer Petrie left the secure part of the station and approached Mr. Bellamy in the public lobby.

14.     Video of the encounter shows that when Officer Petrie entered the lobby he immediately pushed Mr. Bellamy's chest. Mr. Bellamy took a few steps back, then Officer Petrie put his hands on Mr. Bellamy's neck, choking him, and began moving him backwards towards the door.

15.     Officer Petrie pushed Mr. Bellamy out of the double doors of the police station.

16.     Officer Petrie continued to push Mr. Bellamy after he was outside the police station. Mr. Bellamy put up his arms in attempts to prevent being pushed. He continued to back up.

17.     When they were outside, Defendant police officers Cochrane and Borrero joined Officer Petrie. These three officers pushed Mr. Bellamy backwards to the curb. They pushed him to the ground and began punching him.

18.     While Mr. Bellamy was on the ground, Defendant police officer Sheehan joined the other officers in punching and arresting Mr. Bellamy.

19.     Defendants handcuffed Mr. Bellamy with his hands behind his back. Officer Petrie was on Mr. Bellamy's left side. As they walked into the police station Officer Petrie once again choked Mr. Bellamy.

20.     Mr. Bellamy was arrested and charged with assault and battery on Officer Petrie and resisting arrest.

21.     On August 8, 2018, more than a year after his arrest, the Commonwealth filed a *nolle prosequi* on all charges against Mr. Bellamy, stating that it was "in the best interests of justice."

22.     The incident was recorded by cameras at the Springfield police station. MassLive.com published the video of the incident. The raw footage can be viewed here: https://www.youtube.com/watch?v=PKHkA80SFyg. A version of the video edited by MassLive to show the relevant portions from each camera can be viewed here: https://www.youtube.com/watch?v=ZdONEDKL3rg.

23.     The video shows Officer Petrie initiating physical contact with Mr. Bellamy. It shows the Defendants assaulting Mr. Bellamy. The video contradicts Officer Petrie's account of the incident.

**Plaintiff Suffered Harm**

24.     Mr. Bellamy suffered physical and emotional harm as well as financial loss as a result of the Defendants' actions.

25.     He was physically injured by the assault. He had neck pain from the choking and swelling on his arms and hands. He needed a splint on his right wrist. He was prescribed Cyclobenzaprine and Tramadol for his pain.

26.     As a result of his unlawful arrest, Mr. Bellamy lost his job. Without a job his family was unable to afford their rent; as a result, Mr. Bellamy, his wife, and their two young children became homeless. Mr. Bellamy could not continue payments on his motor vehicle, so he lost that as well. While criminal charges were pending, Mr. Bellamy and his family were unable to afford a home, car and other comforts they enjoyed before this incident.

27.     Mr. Bellamy was emotionally upset both at the way he was treated and the way this unlawful arrest and prosecution placed him and his family in desperate circumstances.

**Policies and Customs of the City of Springfield Caused Defendants' Misconduct**

**A. *Lack of supervision and discipline emboldened Officer Petrie and the other Defendant police officers to assault Mr. Bellamy.***

28.     The City of Springfield has allowed policies or customs to develop within its police department that have caused Springfield police officers to believe they can violate the Constitution with impunity. These policies or customs were the moving force behind the misconduct that resulted in the violation of Mr. Bellamy's constitutional rights.

29.     Well before June 29, 2017, the City of Springfield had a policy or custom of deliberate indifference to the rights of civilians by failing to adequately supervise and discipline its police officers.

30.     In keeping with this policy or custom, on June 8, 2018, the City through then Police Commissioner John R. Barbieri informed Mr. Bellamy that after thoroughly investigating his internal affairs complaint and the video of the incident, the City determined that there were "no violations of Springfield Police Department policies or procedures."

31.     The internal investigation ignored Officer Petrie's actions in leaving the secure area of the police station twelve seconds after Mr. Bellamy arrived at the window and immediately making physical contact with Mr. Bellamy. The Springfield Police Department (SPD) chose to ignore Officer Petrie's improper conduct.

32.     Acting Commissioner Cheryl C. Clapprood replaced Barbieri. In March 2019, she reviewed the video and agreed that the officers' actions did not violate of the policies of the City of Springfield.

33.     After the City exonerated all the police officers, a clerk in the criminal court found probable cause to support criminal charges against Officer Petrie.

34.     Criminal charges are currently pending against Officer Petrie for assault and battery on plaintiff Jerry Bellamy.

35.     The SPD failed to appropriately supervise its officers, including the Defendants, to monitor their use of force and de-escalation tactics.

36.     SPD officers therefore believed that their actions would not be properly monitored and that supervising officers would tolerate behavior that violated SPD policy even when the improper conduct was recorded on video.

37.     Officer Petrie assaulted Mr. Bellamy, knowing that his actions were being recorded by the interior and exterior SPD cameras.

38.     Officer Petrie and the other Defendants were emboldened by their understanding that the SPD would not reprimand or discipline them for such behavior.

**B. The SPD fails to properly discipline its officers for violating constitutional rights of civilians.**

39.     In January 2019, a jury found that the City of Springfield has a policy or custom of deliberate indifference to the rights of civilians by failing to adequately supervise and discipline its police officers in the case of *Hutchins v. McKay et. al*, U.S. D. C. Civil No. 16-30008-NMG. The underlying incident took place in January 2013.

40.     There is a pattern of the SPD exonerating officers of allegations of unreasonable force, then these officers later being indicted for criminal conduct in the same incidents.

41.     Proper police policies and regulations prohibit certain conduct even if it is not criminal conduct. Police officers should be held to a higher standard than avoiding criminal indictments.

42.     The SPD was biased toward police officers, favoring their testimony over that of civilians and ignoring credible evidence of officers' misconduct, such as the video evidence in this case.

43.     Years before the incident, the City of Springfield voluntarily entered into a contract with the police union that prohibited the SPD from bringing disciplinary charges against an officer more than 90 days after the incident or after the date the SPD learned of the potential violation, whichever is later. Commissioner Barbieri admitted that this provision hindered the Department's ability to discipline officers.

44.     A 2019 review of the SPD by the Police Executive Research Forum confirmed that: the SPD does not have a policy governing how to receive and investigate complaints; supervisors need additional training on accepting complaints; no early warning

system is in place; interviews of internal investigations are not recorded; the complaint

system is not audited for compliance; and policies are lacking and unclear. These deficiencies

contributed to the SPD's practice of not meaningfully disciplining officers who violate

people's civil rights.

45.     In April 2015, a group of off-duty Springfield police officers assaulted civilians

at Nathan Bill's Bar in Springfield. One person was seriously injured. On-duty police officers

arrived at the scene but did not attempt to locate the suspects.

46.     The officers involved in the assault at Nathan Bill's Bar were not disciplined.

Eventually fourteen officers were indicted for their conduct during the incident and the

investigation, many for filing false police reports, perjury, and misleading a grand jury.

47.     In February 2016, a group of Springfield police detectives including Officer

Gregg Bigda went to the Town of Palmer to recover an unmarked police vehicle that had

been taken for a joy ride by some juveniles. Officer Bigda was recorded in the Palmer police

station threatening a juvenile with physical force and stating that he could plant a kilo of

cocaine on him; like Officer Petrie, Officer Bigda knew that he was on video. He was not

terminated. Two officers have been indicted for this incident while several others received

immunity in exchange for their testimony.

48.     At first, Officer Bigda was not disciplined for this incident. Then, when the

video became public, the City of Springfield imposed only a 60-day suspension. A

Springfield City Councilor compared this discipline to a "smack on the wrist."

49.     Before the incident in February of 2016, Officer Bigda was the subject of at least 24 internal investigations of misconduct. Of these, 13 involved complaints of excessive force. None of the 24 investigations resulted in a sustained finding of wrongdoing.

50.     The SPD did not discipline Officer Bigda for lying although a Superior Court judge found that Officer Bigda had provided false testimony in at least three cases. Officer Bigda was finally suspended indefinitely after he was indicted in federal court.

51.     Officer Ramon Sierra was also given lenient treatment by the City. He failed two drug tests and attempted to pass a third test in 2017 by using another person's urine. Officer Sierra could have been terminated for using a fake sample. Instead, Commissioner Barbieri offered him a "last chance agreement."

52.     The SPD's policy or custom of lenient discipline led SPD officers, including but not limited to the Defendants, to believe they could violate Mr. Bellamy's civil rights with impunity because they knew they would not be disciplined for misconduct.

### C.  The SPD has promoted officers with criminal or disciplinary histories.

53.     In 2017, Officer Bigda applied for a promotion to sergeant. Although he did not receive the promotion, Commissioner John Barbieri signed off on his candidacy.

54.     In 2017, Commissioner Barbieri promoted his wife to sergeant, despite her 2013 felony arrest.

55.     Of the five officers promoted to sergeant in 2018, one was found liable by a federal jury in 2014 for violating the civil rights of 15-year-old African American boy and causing his death, resulting in a $1.3 million verdict; one is suspected to have been involved

in the assaults at Nathan Bill's Bar; and one had been arrested twice, including a 2014 arrest for drunk driving.

56.     Acting Commissioner Cheryl C. Clapprood, who took command of the SPD in February of 2019, had previously been convicted of filing a false report.

57.     By promoting officers alleged or found to have committed crimes, acts of violence, and civil rights violations, the SPD sends a message to officers that the department does not take such misconduct seriously. Officers in turn feel emboldened to violate civilians' constitutional rights because the officers know that they will not suffer adverse consequences for doing so.

### Count I:   42 U.S.C.  Section 1983 – Fourth Amendment Claim

58.     The above paragraphs are incorporated by reference.

59.     Defendants Petrie, Cochrane, Borrero and Sheehan, acting in concert, used unreasonable force on Mr. Bellamy and arrested him without probable cause.

60.     In the alternative, Defendants Cochrane, Borrero and Sheehan had an opportunity to intervene to prevent physical abuse of plaintiff by Defendant Petrie but failed to intervene.

61.     Defendants Petrie, Cochrane, Borrero and Sheehan deprived Mr. Bellamy of his clearly established rights to freedom from the use of unreasonable and excessive force, and freedom from arrest without probable cause, under the Fourth Amendment to the United States Constitution as applied under the Fourteenth Amendment.

62.     As a direct and proximate result of Defendants' actions, Mr. Bellamy suffered the injuries described above.

## Count II: 42 U.S.C. Section 1983 – First Amendment Claim

63.     The above paragraphs are incorporated by reference.

64.     Defendant Petrie used physical force and filed false criminal charges against Mr. Bellamy because he expressed his displeasure with the conduct of Springfield police officers.

65.     Defendant Petrie deprived Mr. Bellamy of his clearly established right to freedom of speech under the First Amendment to the United States Constitution as applied under the Fourteenth Amendment.

66.     As a direct and proximate result of Defendants' actions, Mr. Bellamy suffered the injuries described above.

## Count III: State Law Claim – False Arrest

67.     The above paragraphs are incorporated by reference.

68.     Defendants Petrie, Cochrane, Borrero and Sheehan arrested Mr. Bellamy without probable cause.

69.     Defendants' arrest of Mr. Bellamy was unwarranted, malicious, and was in retaliation for, and to punish Mr. Bellamy for, exercising his right to freedom of speech.

70.     As a direct and proximate result of Defendants' actions, Mr. Bellamy suffered the emotional distress and financial expense described above.

## Count IV: State Law Claim Assault and Battery

71.     The above paragraphs are incorporated by reference.

72.     Defendants Petrie, Cochrane, Borrero and Sheehan committed an assault and battery on Mr. Bellamy.

73.     As a direct and proximate result of Defendants' actions, Mr. Bellamy suffered the damages described above.

## Count V: State Law Claim Malicious Prosecution

74.     The above paragraphs are incorporated by reference.

75.     Defendants Petrie caused criminal charges to be brought against Mr. Bellamy without probable cause and with malice.

76.     The criminal charges terminated in Mr. Bellamy's favor when the Commonwealth refused to prosecute the charges in the interest of justice.

77.     The above paragraphs are incorporated by reference.

## Count VI: Massachusetts Civil Rights Act

78.     The above paragraphs are incorporated by reference.

79.     Acting jointly and in concert, Defendants violated Mr. Bellamy's civil rights under the Massachusetts Civil Rights Act.

80.     As a direct and proximate result of Defendants' actions, Mr. Bellamy suffered the damages described above.

## Count VII: 42 U.S.C. Section 1983 – Defendant City of Springfield

81.     The above paragraphs are incorporated by reference.

82.     Defendant City of Springfield allowed the policies and customs described above to exist within its police department.

83.     These policies and customs of the City of Springfield allowed Defendants Petrie, Cochrane, Borrero and Sheehan to believe that they could commit misconduct against Plaintiff with impunity.

84.     The policies and customs of Defendant City of Springfield were the moving force behind the actions that resulted in the violations of Plaintiff's civil rights.

85.     As a direct and proximate result of Defendants' actions, Mr. Bellamy suffered the injuries described above.

### Relief Requested

WHEREFORE, the plaintiff requests that this Court:

1.      Award compensatory damages;

2.      Award the costs of this action, including reasonable attorney's fees; and

3.      Award such just and further relief as this Court deems just and appropriate.

### Jury Trial Demand

The Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,
Plaintiff, JERRY BELLAMY,

By his attorneys,


/s/ Howard Friedman
Howard Friedman, BBO #180080
Law Offices of Howard Friedman, P.C.
92 State Street, 9th Fl.
Boston, MA 02109
617-742-4100
hfriedman@civil-rights-law.com


/s/ Luke Ryan
Luke Ryan
# 664999
Sasson Turnbull Ryan and Hoose
100 Main Street, Third Floor
Northampton, MA 01060
(413) 586-4800
lryan@strhlaw.com

Dated: February 3, 2020